543 P.2d 782

**The STATE of Arizona, Plaintiff-Appellee,**

**v.**

**Lloyd Emett GARY, Defendant-Appellant.**

**No. 3253.**

Supreme Court of Arizona,
In Banc.
Dec. 18, 1975.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer III and John Pressley Todd, Asst. Attys. Gen., Phoenix, for plaintiff-appellee.

Atmore Baggot, Phoenix, for defendant-appellant.

CAMERON, Chief Justice.

This is an appeal by Lloyd Emett Gary from a conviction of assault with a deadly weapon, A.R.S. § 13–249. The trial court suspended sentence, placed defendant on probation, and ordered that defendant spend six months in the Maricopa County Jail, incarceration to date from 23 September 1974.

On appeal, defendant raises two issues:

1. Did the trial court err in denying defendant's motion for a directed verdict?

2. Did the court improperly refuse to give instructions requested by defendant concerning legal justifications for the use of force?

The relevant facts are as follows. On the evening of 23 September 1974, Phoenix Police Officer Mack Rasor stopped a vehicle near 20th Street and Fillmore, in Phoenix, Arizona, and attempted to arrest the

driver, James Lee Jackson, for driving while intoxicated, A.R.S. § 28–692. As he did so, a fight broke out between him and Jackson. Defendant, a passenger in the Jackson car, got out of the vehicle and approached Jackson and Officer Rasor, who were rolling on the ground. Defendant grabbed the officer's sap (a sap is a "modern day billy stick," approximately 18 inches long consisting of a lead core covered with leather)· and swung it, striking Jackson. He than removed Officer Rasor's pistol from its holster and pointed it at the two fighters. According to Officer Rasor's testimony, Rasor was winning the fight and defendant stated to him, "You better let my partner up * * * (pause). You have five seconds to let my partner up." Defendant, on the other hand, testified that he did not intend to point the gun at Officer Rasor, but rather that he removed the gun to prevent the officer from shooting defendant or Jackson. He further testified that Jackson was prevailing in the scuffle and that while holding the gun he addressed Jackson saying "Get up." He specifically denied using the term "partner" with reference to Jackson. The defendant testified:

"Q Then what happened?

"A Then the officer's arm was like in between Jimmy and the officer and to me it looked like his elbow was coming towards his side. Towards his right side.

"Q Was there anything towards his right side?

"A A revolver.

"Q Where was the revolver placed on the right-hand side?

"A On his hip holster.

"Q Was front holster?

"A Side holster.

"Q Did you observe his right arm, right elbow?

"A Yes, that's what I seen.

"Q What was he doing with his right elbow?

"A At first it was kind of in between him and Jimmy and after I hit Jimmy, maybe Jimmy released his hold a little bit—and I figured he was grabbing for his gun.

"Q Was this a rational decision that you made or impulse?

"A No, I wanted to get the gun.

"Q For what purpose?

"A To keep from shooting Jimmy or me.

"Q Did you have reason to believe he was going to shoot?

"A He was by himself and I could guess what was going on through his mind.

"Q What did you think?

"A That I was there to help Jimmy and he'd have to get out of there.

"Q Where you afraid that he was going to shoot you?

"A Yes.

"Q Or shoot Jimmy?

"A Yes.

"Q What did you do when you saw the hand going towards the officer's gun?

"A I reached down and pulled the strap off the officer's revolver and pulled the strap."

Jackson and Officer Rasor then stood up, and defendant returned the gun at the officer's request saying according to Officer Rasor's testimony, "You better give us a break. I gave you one," or words to that effect.

## MOTION FOR DIRECTED VERDICT

 Defendant argues strenuously that he was entitled to a directed verdict on the grounds that an "attempt to commit a physical injury" is a necessary element of assault and that there was insufficient evidence to establish an "attempt." We disagree. The pointing of a gun in a threatening manner may constitute an "assault" under Arizona law, *State v. Duncan,*

105 Ariz. 426, 466 P.2d 380 (1970), and it is not necessary to show in addition that there was an intent to do physical harm to the victim. *State v. Seebold,* 111 Ariz. 423, 531 P.2d 1130 (1975); *United States v. Harvey,* 428 F.2d 782 (9th Cir. 1970). It logically follows that if an intent to do physical harm is not an element of assault with a deadly weapon when a firearm is used that an attempt to do physical harm is not an element of the crime either. We find no error.

### JURY INSTRUCTIONS

Defendant requested jury instructions based upon A.R.S. §§ 13–246(A)(3) and 13–1207 concerning justification for the pointing of a gun which instructions were refused. The statutes read as follows:

"§ 13–246. Justification for use of force; limitation

"A. Violence used to the person does not amount to assault or battery in the following cases:

\* \* \* \* \* \*

"3. For preservation of the peace, or to prevent the commission of an offense.

\* \* \* \* \* \*

"B. Only that degree of force may be used which is necessary to accomplish the lawful purpose."

"§ 13–1207

"No person in this state shall be subject to \* \* \* criminal liability for using reasonable force to protect \* \* \* another if reasonable grounds exist whereby it appears \* \* \* the other person or persons are in imminent danger of or in the process of becoming the victim of a crime likely to cause bodily injury."

Defendant was attempting to present to the jury two affirmative theories of defense. These were: (1) that defendant acted in order to "preserve the peace" by stopping the fight between Jackson and Officer Rasor; and (2) that defendant in so acting in fact protected Officer Rasor from the crime of aggravated assault.

On the facts of this case and reading the instructions as a whole, we feel that the trial court did not abuse its discretion by refusing to instruct on these theories. We have stated:

"It is, of course, the general rule that instructions must be predicated on some theory of the case which may be found in the evidence, and, when not so predicated, they should not be given, as their tendency would be to mislead the jury. (citations omitted)" *State v. McIntyre,* 106 Ariz. 439, 445, 477 P.2d 529, 535 (1970).

As to defendant's first theory, we note that at the time of the alleged assault, Officer Rasor was engaged in an attempt to effect a lawful arrest. Defendant is thus arguing, in effect, that he assaulted a police officer who was lawfully performing his duty in placing a suspect under arrest, in order to preserve the peace. We do not believe the record supports such interpretation of the facts. The officer was attempting to place Jackson under arrest and as such was neither breaching the peace or committing an offense as A.R.S. § 13–246(A)(3) requires. Neither was Jackson in the process of becoming the victim of a crime committed by the officer as required by A.R.S. § 13–1207.

Defendant's second theory is likewise unsupported by the evidence. It is clear from defendant's own testimony that he did not act for the purpose of protecting Officer Rasor. We find no error.

Judgment affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concurring.